## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Larry D. Maxwell,

        Petitioner,

        v.

Collin Gau, Warden,

        Respondent.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-1770 ADM/TNL

_____

Larry D. Maxwell, pro se.

Linda Kay Jenny, Esq., Hennepin County Attorney's Office, Minneapolis, MN; Matthew Frank, Esq., and Jennifer R. Coates, Esq., Minnesota Attorney General's Office, St. Paul, MN, for Respondent.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Larry D. Maxwell's Objection [Docket No. 19][1] to Magistrate Judge Tony N. Leung's November 8, 2013 Report and Recommendation [Docket No. 15] ("R&R").  In his R&R, Judge Leung recommended denying Maxwell's Writ of Habeas Corpus Petition [Docket No. 1] ("Petition") and dismissing the case summarily.  After a thorough de novo review of the record and for the reasons stated below, Maxwell's objections are overruled and Judge Leung's R&R is adopted.

## II.  BACKGROUND

The factual and procedural history of this dispute is more fully recited in Judge Leung's R&R and is incorporated here by reference.  In summary, Maxwell was a real estate agent who

_____

[1] Maxwell filed his Objection on February 20, 2014, after the Court granted his request for an extension of time.

helped arrange fraudulent real estate transactions between 2005 and 2007.  See State v. Maxwell, No. A09–2018, 2011 WL 1544505, at *1 (Minn. Ct. App. Apr. 26, 2011).  Maxwell worked with others, including Trent Bowman, to procure and use fake identity documents to obtain financing for the fraudulent purchase of four properties.  R&R at 2.

After the fraudulent real estate transactions were discovered, Maxwell was charged with multiple criminal offenses.  On April 23, 2009, after a month-long trial, a jury convicted Maxwell on eighteen counts, finding Maxwell guilty of one count of racketeering, two counts of identity theft, nine counts of theft-by-swindle, and six counts of aggravated forgery.  Maxwell, 2011 WL 1544505, at *1.  He was sentenced to 198 months in prison.  Id.

Maxwell filed a direct appeal to the Minnesota Court of Appeals.  Maxwell's appellate counsel presented several arguments addressing the admission of certain evidence, the exclusion of other evidence, jury instructions, the sufficiency of evidence, and challenging the sentence imposed.  Maxwell filed a pro se supplemental brief that raised additional arguments.  The Minnesota Court of Appeals considered and rejected all of Maxwell's claims on the merits and affirmed his conviction.  See Maxwell, 2011 WL 1544505, at *24.  The Minnesota Supreme Court summarily denied further review.  On July 23, 2012, Maxwell filed this Petition in federal court.

In a thirty-one page report and recommendation, Judge Leung found three of Maxwell's habeas corpus claims—Grounds 1, 2, and 5—were not presented to the Minnesota Supreme Court and therefore are barred by the doctrine of procedural default.  Judge Leung carefully analyzed Maxwell's remaining claims—Grounds 3, 4A, and 4B.  When a federal court reviews a state decision, the federal district court is not allowed to conduct its own de novo review of a

2

petitioner's constitutional claims.  Respecting this level of review, Judge Leung found Maxwell

had not presented evidence that the "state court's ruling on the claim[s] being presented in

federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."  R&R at 15

(citing Harrington v. Richter, 131 S.Ct. 770, 787 (2011)).  Therefore, Judge Leung recommends

the Court find Maxwell is not entitled to a writ of habeas corpus.

Maxwell objects to Judge Leung's recommendation on all grounds.  In addition,

Maxwell claims Judge Leung acknowledged that his state appellate counsel was ineffective, and

therefore, ineffective assistance of counsel should be added to his grounds for relief.  Finally,

Maxwell raises for the first time evidence he argues is proof of his innocence.

## III.  DISCUSSION

### A.  Standard of Review

In reviewing a magistrate judge's recommendation, the district court "shall make a de

novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); see also D. Minn.

L.R. 72.2(b).  A district judge "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  Id.

Under 28 U.S.C. § 2254, federal court habeas review of state court criminal convictions

resulting in incarceration is limited:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d)(1).

After a de novo review, the Court adopts Judge Leung's R&R. Maxwell's habeas corpus petition is denied because Grounds 1, 2, and 5 were procedurally defaulted in the Minnesota state courts and Grounds 3, 4A and 4B were not decided by the Minnesota Court of Appeals in an objectively unreasonable manner. Maxwell's additional claims of ineffective assistance of counsel and actual innocence are also rejected.

## B. Procedurally Defaulted Claims

A claim procedurally defaulted in state courts will not be entertained in a federal habeas corpus proceeding unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Neither exception applies here. The claims in Grounds 1, 2, and 5 were known to Maxwell during his direct appeal and were required to be raised then.

### 1. Ineffective Assistance of Counsel

In his Objection, Maxwell argues for the first time his procedural defaults were the result of ineffective assistance of counsel, and therefore, his "cause and prejudice" is the failure of his counsel to present claims Maxwell wanted reviewed on direct appeal. Objection at 2-3.

"The exhaustion doctrine requires that a claim for ineffective assistance of counsel be initially 'presented to the state courts as an independent claim before it may be used to establish

cause for a procedural default' in a federal habeas proceeding." Beaulieu v. Minnesota, 583 F.3d

570, 575 (8th Cir. 2009) (quoting Taylor v. Bowersox, 329 F.3d 963, 971 (8th Cir. 2003) and

Murray v. Carrier, 477 U.S. 478, 489 (1986)).  Explaining that "the exhaustion doctrine is

designed to give the state courts a full and fair opportunity to resolve federal constitutional

claims before those claims are presented to the federal courts," the Supreme Court has held "that

state prisoners must give the state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review process." Id.

(quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  Habeas petitioners are required "to

present to the state courts the same specific claims of ineffective assistance made out in the

habeas petition." Id. (quotations omitted).

  Maxwell did not raise an ineffective assistance of counsel claim in his state appeals

process, either as an independent claim or as the cause for his failure to raise Grounds 1, 2, and

5.  He argues that he did not have the opportunity to raise the claims because he was relying on

his trial counsel and his appellate counsel to raise all relevant issues.  This excuse is belied by

the Minnesota Court of Appeals acceptance and consideration of all claims raised by Maxwell's

appellate counsel, as well as the claims Maxwell personally raised in his Pro Se Supplemental

Brief.  If Maxwell believed his counsel was inadequate, he needed to bring those concerns before

the state court in the first instance.[2]  Thus, Maxwell's ineffective assistance of counsel claim was

---

[2] In his Objection, Maxwell argues he "subtly" made his ineffective assistance of counsel claim by placing an asterisk next to "(i) Denial of effective assistance of counsel" in a habeas petition worksheet that helps pro se plaintiffs consider their claims.  Petition Ex. 1, at 21. Treating Maxwell's submissions liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Court has addressed Maxwell's ineffective assistance of counsel claim even though Maxwell did not make specific claims of ineffective assistance of counsel in his habeas petition.  The Court notes that the habeas worksheet also alerts petitioners that "In order to proceed in federal court,

procedurally defaulted.

## 2. Actual Innocence

In his Objection, Maxwell also argues for the first time that he has acquired new evidence proving his innocence.

The "fundamental miscarriage of justice" exception to overcome a procedural default is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  In other words, a petitioner cannot simply point to errors that allegedly occurred during the course of his state criminal case; he must instead offer some new evidence which affirmatively demonstrates that he is, in fact, innocent of the crime for which he was convicted.  See Murphy v. King, 652 F.3d 845, 850 (8th Cir. 2011); see also Cassell v. Norris, 103 F.3d 61, 62 (8th Cir. 1996) ("For actual innocence to lift the procedural bar, [a petitioner] must show that it is more likely than not that, in light of new evidence, no reasonable juror would have convicted him."), cert. denied, 522 U.S. 857 (1997).  The actual innocence exception is concerned with claims of actual, not legal, innocence.  Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994).  Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. at 298, and exculpatory scientific evidence.

---

you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court."  Petition Ex. 1, at 20-21  The worksheet further reminds petitioners that they must allege facts that support each ground for relief.  Id.  Even if Maxwell had exhausted his state court remedies, he did not provide any facts which could sustain an ineffective assistance of counsel claim.

Recently, Maxwell received two letters from a co-conspirator, Jerome L. Kingrussell. Objection at 9-18, App. A (October 18, 2013 Letter), and App. B (December 27, 2013 Letter).[3] In the first letter, Kingrussell writes, "I know that you [Maxwell] made your own decision and them decision also got you where your at" [sic].  Kingrussell nevertheless apologizes for "turning" on Maxwell by testifying against him.  October 18, 2013 Letter, at A1-2.  In the second letter, Kingrussell again asks for forgiveness from Maxwell, and alluding to the conspiracy at the heart of their convictions, writes, "I played a part in a scam that used you [Maxwell] as a fall guy (escape Goat)" [sic].  December 27, 2013 Letter.  Maxwell argues that in these letters Kingrussell has admitted to committing perjury, recanted his testimony, and implicated the state prosecutors in coercing Kingrussell's testimony.  Maxwell also argues that the letters show he was a "fall guy" for the scheme and another conspirator was the mastermind.

Setting aside the reliability of a letter from a co-conspirator, the letters themselves do not claim Maxwell is innocent of the crimes for which he was convicted; Kingrussell alludes to Maxwell as a member of the criminal conspiracy.  At most, the letters ascribe Maxwell a lesser role in the scheme to defraud.  Maxwell has offered no other corroborative proof that he was not involved in the conspiracy.  Furthermore, Maxwell has not shown how Kingrussell's letters offer new evidence.  Maxwell's recent receipt of the letters does not make them new information.  Maxwell had the opportunity to challenge the state prosecutor's evidence at trial, including the cross-examination of Kingrussell.  Maxwell has failed to show the evidence he now relies upon is either (a) affirmative proof of innocence, or (b) new evidence unavailable at the time of trial.  Therefore, Maxwell has made no claim of actual innocence, and has not demonstrated a

---

[3] Judge Leung was not presented with these letters.

"fundamental miscarriage of justice."

Accordingly, because Maxwell has failed to demonstrate any of the <u>Coleman</u> factors and has failed to produce any new evidence supporting actual innocence, Maxwell's claims in Grounds 1, 2, and 5 are procedurally defaulted.

## C. Maxwell's Remaining Claims

Maxwell's remaining objections reiterate the same arguments already addressed by Judge Leung.  The Court has conducted a de novo review of the files, records, and proceedings in view of those arguments and agrees with Judge Leung's conclusions.

### 1.  Right to Present Evidence in Support of Defense (Ground 3)

Maxwell asserts that the trial court violated his right to present a complete defense by not allowing him to present evidence intended to show either (a) that the victims of Maxwell's alleged offenses "received something of value" from the mortgage loan transactions at issue, or (b) that the victims themselves were responsible for whatever losses they incurred because they were "negligent, greedy, gullible, incompetent, or imprudent."  Respondent's App. [Docket No. 9] ("RA"), at 92-101 (Order on Maxwell's Motions in Limine, February 18, 2009).  Essentially, Maxwell argues the mortgage entities, which approved fraudulent loans based on the representations of the conspirators, were not victims for the purposes of Minnesota law.  The trial court excluded Maxwell's proposed evidence because it had no bearing on whether Maxwell committed theft-by-swindle.  Under Minnesota law, the crime of theft-by-swindle "is complete when the lender parts with its money; that the lender received something of value in exchange is not a defense."  <u>Id.</u> at 95.  The Minnesota Court of Appeals upheld the trial court's ruling.  <u>Maxwell</u>, 2011 WL 1544505, at *3-4.  Judge Leung found that the Minnesota trial court

and the Minnesota Court of Appeals correctly analyzed the legal question (or at the very least,

reasonably applied Minnesota law) when they found Maxwell's proposed evidence irrelevant to

the crime of theft-by-swindle.

In his Objection, Maxwell argues the findings of fact in a civil case against Maxwell,

Kingrussell, and several of the mortgage entities, proves that his evidence against the mortgage

entities is relevant to his guilt of theft-by-swindle.  Objection, at 25-30 and  Appendix E.  In the

civil case, the state court found that if the mortgage entities had "acted in a commercially

reasonable manner, the loans to the fake "Foster" should never have been approved" and thus,

the Foster family, whose identity had been stolen, would not have faced financial ruin.[4]  Maxwell

argues that the mortgage companies' hand in the Foster's financial ruin somehow lessens the

crimes of taking the Foster's identity and using it to acquire fraudulent loans.

This is not a new argument; it reiterates arguments Maxwell has made in the past.  The

civil case does not change the crime of theft-by-swindle, Maxwell's "culpability was not reduced

by evidence showing that he swindled gullible or greedy lenders rather than prudent lenders."

Maxwell, 2011 WL 1544505, at *4.  Therefore, Maxwell's objection does not alter Judge

Leung's well-considered analysis and Maxwell is not entitled to habeas corpus relief based on

Ground 3 of his petition.

### 2.  Jury Instruction on Unanimous Verdict (Ground 4A)

Besides making a general objection to Judge Leung's conclusions of law, Maxwell made

no further argument claiming he was deprived of his constitutional right to have the jury be

---

[4] The civil case records the severe consequences faced by the real Foster family.  The
mortgage entities, Maxwell, and Kingrussell face a judgment of more than $800,000 for the
damage they did to the Fosters.

properly instructed on the necessity of reaching a unanimous verdict.  Judge Leung concluded the Minnesota Court of Appeals' analysis and denial of Maxwell's jury instruction claim is fully consistent with United States Supreme Court precedence.  The Court agrees with Judge Leung that Maxwell's claim should thus be denied on the merits.

### 3.  Insufficiency of the Evidence (Ground 4B)

In Ground 4B, Maxwell contends that his conviction for racketeering should be vacated because there was insufficient evidence to support the jury's verdict.  Judge Leung rejected Maxwell's argument, finding the Minnesota Court of Appeals gave the requisite measure of deference to the jury's verdict, and noting Maxwell had made virtually no effort to explain why he believes the state court decision was "objectively unreasonable."  R&R at 27, 29 (citing Cavazos v. Smith, 132 S. Ct. 2, 4 (2011)).

In his Objection, Maxwell argues his "new evidence" and the findings of the civil court show that a jury could not have found him guilty beyond a reasonable doubt.  As discussed above, the Kingrussell letters and civil court findings do not call into question Maxwell's participation in the racketeering scheme.  Nor do they prove Maxwell is innocent of the crimes for which he has been convicted.  Reviewing the Minnesota Court of Appeals' analysis of Maxwell's sufficiency of the evidence claim, Maxwell has not called into question any of the court's findings, let alone done so to the level needed for a federal court to conclude the Court of Appeals acted in an "objectively unreasonable" manner.  Therefore, the Court again agrees with Judge Leung's conclusion that Maxwell's insufficiency of the evidence claim must be denied.

Having reviewed all of the issues raised in Maxwell's submissions, the Court agrees with Judge Leung that Maxwell's habeas petition must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this § 2254 motion differently, or that any of the issues raised in Maxwell's petition would be debatable among reasonable jurists.  Therefore, the Court declines to grant a certificate of appealability.

**V.  CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Petitioner Larry D. Maxwell's Objection [Docket No. 19] to Magistrate Judge

Tony N. Leung's November 8, 2013 Report and Recommendation [Docket No.

15] is **OVERRULED**;

2.      The Report and Recommendation is **ADOPTED**; and

3.      Maxwell's Petition for a Writ of Habeas Corpus Under § 2254 [Docket No. 1] is

**DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 8, 2014.